I .MOORE, J.
The state filed an action to terminate the parental rights of the legal and biological parents of two minor girls, A.R.S. and J.D.S. The trial court rendered judgment terminating the parental rights of the legal and biological fathers and the mother, who is remarried. The mother appealed the ruling. We affirm.
Facts and Procedural History
The appellant is the mother of the two girls, currently ages 13 and 9, born during the mother’s marriage to R.S. The biological father of the younger girl is R.S.’s brother, J.S. The mother divorced R.S. and is now remarried to M.P.
The girls were taken into state custody on October 17, 2001 by Instanter Order due to neglect (lack of supervision) and sexual abuse. On October 22, 2001, a continued custody hearing was held, at which time all parties stipulated that reasonable grounds existed to believe that the children were in need of care due to the allegations of neglect and sexual abuse. They were adjudicated Children in Need of Care on December 17, 2001.
The sexual abuse allegation that prompted these proceedings was committed by the stepfather, M.P., upon the older child, A.R.S., who was 9 years old at the time. A.R.S. stated that M.P. fondled her on at least three different occasions. A physical examination of the younger child, J.D.S., indicated that she has also been sexually abused, although the child denies it.
There were previous reports of abuse in this family. As far back as 1994, when the mother was married to R.S., the legal father of the two girls, |?R.S. admitted to fondling his 14-year old niece while she visited the home. He pled guilty to and was convicted of contributing to the delinquency of a minor. The state alleged that there were additional valid reports of molestation, and that the mother allowed R.S. to have unsupervised visits with A.R.S. even after he was convicted of child molestation. R.S. is alleged to have also molested A.R.S. which caused her to be placed in foster care from September of 1995 to January 1996.
The state established case plans to work with all the parents toward reunification. The mother’s case plan provided in part that: she admit that her actions contributed to the abuse and neglect; she attend parenting classes and be able to put into effect the things she had learned; she submit to random drug screens; she attend counseling with an approved counsel- or regarding her continued association with sexually abusive men and consider if she could live alone and raise her children safely; and that she meet the needs of the children with regard to affection, nurture and support.
The children have remained in continuous custody of the state since October 17, 2001. In February 2003, after concluding that all the parents had failed to comply with the case plans, the state initiated proceedings to terminate the parental rights of all the parents. Regarding the mother of the two girls, the state alleged that the children had been in foster care for over one year, and despite the reasonable efforts of the Department of Social Services, the mother has not substantially complied with the case plans in order to have the children safely returned to her. The state alleged that there is no reasonable expectation of significant improvement in her condition or [ ^conduct considering these children’s ages and the need for a safe, stable and permanent home. Specifically, the state alleged that there had been a lack of compliance with the case plans by the mother in the following ways:
*753 (1) By her refusal to admit that her actions contributed to the sexual abuse of the girls. She refuses to accept that M.P. has molested A.R.S. and continues to live with him.
(2) Although the mother attended her parenting classes, she failed to put into effect the things she has learned with respect to her own life.
(3) By failing to submit to drug screens for various reasons.
(4) By failing to attend counseling with a licensed therapist in order to explore her continued association with sexually abusive men, and to consider living alone and raise her children safely.
After a lengthy trial, the court rendered judgment with oral reasons. The court found that more than a year had passed since the children were placed in state custody after the petition to terminate parental rights was filed. It noted that the mother had failed to comply with the important aspects of the case plan, namely, she had failed to continue anger management counseling with a licensed counselor and continued to live with a man who had sexually abused her children. The court went on to find that the mother’s two witnesses were not credible. It stated that it did not think that the mother could protect the children or provide for them. It concluded that it was in the best interest of the children to terminate her parental rights so as to allow adoption of the children.
|4The mother appeals the court’s ruling, alleging three assignments of error; namely, that the trial court manifestly erred in finding that (1) the mother did not substantially comply with the case plan; (2) the evidence supported the conclusion that the mother’s reformation in the near future is unlikely; and (3) the stepfather was guilty of sexual abuse when there was not sufficient evidence to support that conclusion and (3a) by using that conclusion to terminate the mother’s parental rights.
Discussion
Termination of parental rights is governed by Title X of the Children’s Code. As it applies to this case, termination of parental rights is warranted when (1) at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; (2) there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and (3) despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable and permanent home. La. Ch. C. art. 1015(5).
Lack of parental compliance with a case plan is defined as one or more of the following:
(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
1 b(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5)The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
*754 (6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
La. Ch. C. art. 1036 C.
Lack of reasonable expectation of significant improvement in the parent’s conduct in the near future may be proved by any of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
La. Ch. C. art. 1036 D.
The state must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond. La. Ch. C. art. 1035 A; Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State in Interest of SMW, 2000-3277 (La.2/21/01), 781 So.2d 1223. To meet this burden, the state need establish only one statutory ground for termination, but the court must also find that termination is in the l^best interest of the child. La. Ch. C. art. 1037 B; State in Interest of SMW, supra.
An appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. In re AJF, 2000-0948 (La.6/30/00), 764 So.2d 47. Under this standard, if there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. State in Interest of SMW, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989).
In this case, the mother contends that the state did not meet its burden of proving by clear and convincing evidence that she did not substantially comply with the court-approved case plan, that the mother’s reformation was not likely, and by concluding that the stepfather was guilty of sexual abuse. She refers to testimony in her brief showing that she attended her parenting classes, and benefitted from them. She submitted to five drug screens over the a one-year period and tested positive only for the first test. She attended three counseling sessions and six anger management sessions and she stated that they had helped her. She accuses the state of disregarding evidence in her favor in order to take the children.
The case manager of this ease was Gretchen Broadnax. She testified that the mother and M.P. attended parenting classes at Family Matters. She said that the mother told her that she learned appropriate discipline techniques and age-appropriate ways of dealing children. After psychological evaluations by Dr. Bobby Stephenson, the couple was referred to Ms. Mary Newton, a licensed therapist, for anger management 17and the issue of sexual abuse. According to Ms. Broadnax and Ms. Newton, the mother went to three sessions, but refused thereafter to return because she would not admit that her husband had abused A.R.S. The state paid for *755 the first three sessions with Ms. Newton and had approval to pay for the additional sessions.
Ms. Broadnax testified that she was aware that after discontinuing counseling with Ms. Newton, the mother and M.P. went to the ULM Marriage and Family Counseling and received counseling from a student intern. Ms. Broadnax stated that she told the mother that she must go to a licensed therapist. She also said that although she received progress reports regarding these counseling sessions, the counseling did not address the sexual abuse issues.
Ms. Broadnax testified also that the mother has maintained adequate housing, and she secured employment in 2002 and has maintained that employment. However, she does not believe that it is safe for the girls to return to that home because of the presence of M.P. and because the mother 100% denies that anything wrong occurred between M.P. and A.R.S.
Ms. Broadnax supervised visits to the home by the two girls and said that the mother openly expresses love and affection for the girls and is concerned about their well-being and behavior. However, her interactions with them are inappropriate when the abuse is mentioned. She testified that she has observed A.R.S. and the mother on several occasions regarding the discussion of the abuse and A.R.S. would cry and beg her mother to believe her. She also confronted M.P. and asked him what he had done to her. She |ssaid the mother initially became extremely upset and shouted at the child that M.P. did not do anything to her, and accused the child of lying. She recalled one visit on October 7, 2002 in which she shouted to A.R.S. that if M.P. “admits it he’ll go to jail, y’all won’t have a home to come back to and I won’t have anything.” In the later visits, Ms. Broadnax said that the mother was much calmer and did not shout. Nevertheless, M.P. continued to deny the incidents, and the mother continued to tell A.R.S. she was lying.
Dr. Bobby Stephenson evaluated the entire family. He administered various tests including IQ tests and concluded that both girls have some mental disabilities and suffer from ADHD. Their IQ scores and their parents’ IQ scores are all below 75. With regard to the mother, Dr. Stephenson noted that she suffers from depression and has a history of anger management problems. He also observed that she has a history of being in disturbed relationships and she is functioning in the mildly mentally handicapped range. He opined that she is poorly equipped to deal with two children who have ADHD and who have been molested-one by M.P. with whom she is living and currently married. The doctor admitted that he has no proof of this other than what A.R.S. told him.
Our review indicates that while the record supports the conclusion that the mother complied with the case plan in some respects, such as attending parenting and counseling sessions, on the very issue that started these proceedings, i.e., the alleged molestation of the older child by M.P., the mother has continued to deny the allegations that her husband had fondled the older child despite conclusions to the contrary by state | {¡counselors. Accordingly, she has steadfastly refused to remove M.P. from the family home or move and establish a different household, both of which were the goals of the case plan and the counseling she refused to attend.
We also note that the mother failed to take drug screen tests on several occasions, claiming that she was in her menstrual period and would be embarrassed. The testimony indicates that her husband, M.P., failed his drug screens, and the *756 mother admitted that M.P. smoked marijuana.
These facts constitute a substantial failure to comply with the case plan under La. Ch. C. art. 1036(C)(6) and (7), which state:
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
The mother has refused to attend counseling regarding her relationships with sexually abusive men and to consider living independently in order to protect the children from such men. It was these conditions that led to the removal of the two girls and there has been an obvious lack of substantial improvement in redressing the conditions which continue to prevent reunification. We conclude, therefore, that the trial court did not err in its conclusion that the mother has not substantially complied with the case plan.
The mother contends also that the trial court erred in concluding that the mother’s reformation in the near future is unlikely. However, our review of the testimony indicates that while the mother complied with the case plan in attending some parenting counseling and submitting to somelmdrug screening, she in fact failed one drug screen and refused to submit to several others. She admitted some drug use and M.P. failed his drug screening and admitted drug use. Both the mother and M.P. refused to go to counseling regarding the case plan for sexual abuse and the mother has stated that they will not correct this problem. Additionally, Dr. Stephenson evaluated the girls and the parents and concluded that the mother is simply poorly equipped to handle these two girls who are suffering from learning and behavior problems. Both Dr. Stephenson and Dr. Aruna Gullapalli, a psychiatrist, testified that the mother continues to suffer from depression and anger.
We recognize that despite her limited resources, the mother has attempted to comply with several aspects of her case plan. However her efforts have fallen short. As we recently noted in State ex rel M.A.S., 38,677, 38,678 (La.App. 2 Cir. 2004), 873 So.2d 817, quoting the supreme court in State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445, “a reasonable expectation of reformation is found to exist if the parent has cooperated with state officials and has shown improvement, although all the problems that exist have not been eliminated.” State in Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993).
The steadfast refusal to comply with the primary goal of providing a safe environment for the girls by removing M.P. from the household clearly demonstrates that there is no likelihood that the conduct will change. Based on our review of this record, we conclude that there is sufficient evidence to support the trial court’s finding that there is no reasonable expectation of Insignificant improvement in the parent’s conduct.
The most contentious issue in this case is whether the mother’s current husband, M.P., sexually abused A.R.S. The mother testified that she did not think the abuse occurred and M.P. vehemently denied that he fondled A.R.S. There is physical evidence that both children have been molested at some time, but the mother attributes this to her former husband, R.S. On the other hand, Dr. Stephenson evaluated the two girls and believed from an evaluation of their responses to questions on several psychological tests that the girls had been sexually abused. He also believed that M.P. had sexually abused *757 A.R.S. based solely on her statements to him.
As we noted earlier in this opinion, if there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. State in Interest of SMW, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989). The child stated she was fondled on three occasions by M.P. The state case workers and Dr. Stephenson believe that A.R.S. was telling the truth. A physical examination indicated abuse of both children at some time. By contrast, the mother and M.P. denied that any abuse occurred. In this instance, the trial court believed the evaluations of the case workers and psychologists who concluded that A.R.S. was molested by M.P. The trial court is entitled to give weight to their opinions in this matter and conclude that the grounds for which these proceedings began were valid. Accordingly, we conclude that this assignment is without merit.
|i2For these reasons, we conclude that the trial court did not manifestly err in its factual findings that the mother has not substantially complied with the case plan and that there is no reasonable expectation of reformation. We also conclude that the district court did not err in concluding that the state met its burden of showing by clear and convincing evidence that it is in the best interest of the children that the mother’s parental rights be terminated and the children freed for adoption.
For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.